# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
            **Plaintiff,**

            **v.**                                          **Case No. 25-CR-29**

**MARIO A. HOBSON**
            **Defendant.**

---

## DECISION AND ORDER

The government charged defendants Mario Hobson and Darrell Tyler with robbing a Boost Mobile store, <u>see</u> 18 U.S.C. § 1951(a), and brandishing a firearm during that crime of violence, <u>see</u> 18 U.S.C. § 924(c). Hobson moved to suppress evidence obtained pursuant to search warrants for (1) his cell phone, (2) his residence, and (3) his vehicle, arguing that the warrant affidavits failed to establish probable cause and contained material misrepresentations or omissions. The magistrate judge handling pre-trial proceedings recommended the motion be denied. Hobson objects. My review is de novo. <u>See</u> Fed. R. Crim. P. 59(b).

### I. APPLICABLE LEGAL STANDARDS

When a motion to suppress is based on a challenge to a search warrant, the court gives great deference to the issuing judge and will uphold her finding of probable cause so long as there was a substantial basis for concluding that a search would uncover evidence of a crime. <u>United States v. Maxwell</u>, 143 F.4th 844, 852 (7th Cir. 2025). "Probable cause is not a high standard. It simply means there is a reasonable likelihood evidence of wrongdoing will be found." <u>United States v. Schenck</u>, 3 F.4th 943, 946 (7th Cir. 2021). The task of the issuing judge is to make a practical, commonsense decision whether, given all the circumstances set

forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Rees, 957 F.3d 761, 766 (7th Cir. 2020). Probable cause depends on the totality of the circumstances—the whole picture—not each fact in isolation. Id. Ultimately, the issuing judge must decide whether the affidavit provided enough information to warrant a prudent person to believe that criminal conduct occurred and evidence of it will be found in the place(s) to be searched. Id.

The Seventh Circuit has consistently held that probable cause does not require direct evidence linking a crime to a particular place. United States v. Zamudio, 909 F.3d 172, 175 (7th Cir. 2018). Rather, issuing judges may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense. Id. Thus, an affidavit submitted in support of a warrant application need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place. Id. at 176. The issuing judge is also entitled to take the officer-affiant's experience into account in deciding where evidence is likely to be found. Id.

Even if the reviewing court finds the warrant invalid, the evidence recovered may be admitted at trial if the executing officer relied on the warrant in "good faith." United States v. Leon, 468 U.S. 897, 922 (1984). Where an officer goes through the effort to secure a warrant, the court presumes he acted in good faith. United States v. Vizcarra-Millan, 15 F.4th 473, 502 (7th Cir. 2021). The presumption of good faith can be rebutted if the defendant shows that (1) the judge issuing the warrant abandoned her detached and neutral role; (2) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable; or (3) the officer was dishonest or reckless in preparing the affidavit. United States v.

2

Woodfork, 999 F.3d 511, 519 (7th Cir. 2021).

In the present case, the second and third categories are implicated. Under the second, a defendant can establish unreasonable reliance only if courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand or the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. United States v. Woolsey, 535 F.3d 540, 548 (7th Cir. 2008) (citing United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002)).

Under the third category, the court must consider the standards adopted in Franks v. Delaware, 438 U.S. 154 (1978). In Franks, the Supreme Court recognized a "presumption of validity" with respect to the affidavit supporting a search warrant. Id. at 171. However, a search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information, or by omitting material information from the affidavit provided to the issuing judge. Woodfork, 999 F.3d at 516. A defendant may obtain a so-called Franks hearing if he makes a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. Id. This showing must be more than conclusory and supported by more than a mere desire to cross-examine. United States v. Hecke, 147 F.4th 742, 749 (7th Cir. 2025). Because these elements are hard to prove, Franks hearings are rarely held. Woodfork, 999 F.3d at 516. At a Franks hearing, to successfully demonstrate that a search warrant was unconstitutional such that the fruits of the search pursuant to the warrant must be suppressed, the defendant must show by preponderance of the evidence that: (1) the search warrant affidavit contained a false

3

material statement or omitted a material fact; (2) the affiant omitted the material fact or made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement is material to the finding of probable cause. United States v. Harris, 531 F.3d 507, 512 (7th Cir. 2008) (citing United States v. Lowe, 516 F.3d 580, 584 (7th Cir. 2008)).

## II. BACKGROUND

The magistrate judge's report sets forth the operative facts, which do not appear to be in dispute. (R. 60 at 2-6; see also R. 48, warrant applications and supporting defense exhibits.) I present an abbreviated version herein.

**A.    The Warrants**

**1.    Cell Phone Warrant**

On December 18, 2024, Detective Porter applied for and was granted a warrant authorizing a pen register, disclosure of historical cell-site location data, and real-time tracking information for a cell phone number ending in 9799 (the "target number"). In support, Porter averred that on November 25, 2024, two men robbed a Boost Mobile store located at 949 N. 27th Street in Milwaukee. "Suspect 1" was described as a Black male in his mid-20s to mid-30s, approximately 5'10" to 6'00" tall, with a medium build, wearing a black hooded sweatshirt, black Adidas pants, and a black mask covering the lower portion of his face. "Suspect 2" was described as a Black male in his mid-20s to mid-30s, approximately 5'10" to 6'00" tall, wearing all black clothing, including a black hooded sweatshirt, black pants, and a black mask. Suspect 2 was also carrying a black messenger-style duffle bag with some sort of lettering on the outside. Suspect 1 displayed a firearm and demanded money and cell phones, while Suspect 2 entered the store's back room and loaded various cell phone components into his bag.

4

Porter averred that DA Investigator Strasser made several stills of Suspect 2 from the store's security video, and facial recognition software provided a possible identification of Tyler, with a similarity of 92%. Strasser also reviewed booking photos of Tyler and compared them to Suspect 2 in the security footage, determining they were a match. Porter further averred that Suspect 2's left hand, visible in the security images, contained a tattoo that matched the tattoo seen on Tyler's hand in his booking photos.

Law enforcement learned of Tyler's Facebook page and two recent cell phone numbers associated with Tyler from his former romantic partner. Strasser reviewed Tyler's Facebook page, locating a post from July 5, 2024, where Tyler is seen wearing black shiny shoes with white soles and a small white rectangle emblem on the rear heel, which Porter averred were the exact shoes Suspect 2 wore during the robbery.

Surveillance video from a property located directly west of the Boost Mobile store showed a black or dark colored Lincoln MKS sedan park in the 900 block of N. 28th Street. About 10 minutes later, Suspect 2 (believed to be Tyler) exited the MKS and walked towards the store, while the MKS drove away out of view. Shortly after the robbery, the video showed Suspect 2 walking with a filled duffle bag. Moments later, the same MKS was observed traveling out of view. The MKS did not have a license plate, although a possible temporary plate was observed in the lower right portion of the rear windshield.

Law enforcement obtained a search warrant for Tyler's phone records, covering the period of November 11, 2024 through December 5, 2024, which revealed 178 calls/texts between Tyler and the target number. "MPD records had this phone number belonging to Mario A. Hobson[.]" (R. 48-1 at 4 ¶ 24.) "Hobson is listed as being 5'10", 200 pounds and matches the general build of Suspect 1." (R. 48-1 at 4 ¶ 24.)

5

Strasser checked DOT records and found that Hobson owned a gray 2014 Lincoln MKS sedan. The Milwaukee County Sheriff's Office had a CAD report dated July 1, 2024, showing contact with this vehicle, and body camera footage from this contact showed that the MKS had a temporary license plate in the lower right portion of the rear windshield and the same rear badging on the trunk and 14-spoke wheels as the suspect vehicle in the robbery.

Finally, Porter averred that on December 11, 2024, it was learned that Hobson changed his mailing address on December 7, 2024, to 2941 North 38th Street in Milwaukee. The MKS was observed parked in the alley behind this address and the same rectangular piece of paper was in the lower right portion of the rear windshield with no license plate displayed. Porter stated that he believed this vehicle was the suspect vehicle from the robbery and that Hobson was a suspect in the robbery and likely in possession of the cell phone with the target number. Porter averred that he is aware suspects committing crimes of this nature often use their cell phones in some way to help them perpetrate said crimes, and that there is often evidence contained on the phones that aids in the prosecution of these crimes. Porter further averred that based on his training, experience, and observations of everyday life, the use of cell phones is pervasive; thus, he believed Hobson had his cell phone on him during the robbery and was still in possession of the phone. The affidavit was reviewed by an assistant district attorney.

### 2. Residential Warrant

On January 9, 2025, Detective Castro applied for and was granted a warrant to search 2410A North 49th Street in Milwaukee. Castro's affidavit largely tracked Porter's regarding the November 25, 2024, armed robbery of the Boost Mobile store and the following investigation. Castro added that records from the cell phone warrant showed Hobson's phone was in the area around the time of the robbery. Castro also added that on January 8, 2025, Hobson was

6

arrested on a temporary felony warrant and taken into custody. Castro further averred that Porter and Strasser conducted undercover surveillance of Hobson on January 8, 2025, and observed him driving the Lincoln MKS, parking in front of 2410/2410A North 49th Street, exiting the vehicle, and using keys to enter the main entry door. During the booking process, Hobson listed his home address as 2410A North 49th Street and confirmed it was the upper unit.

Castro averred that, based on his training and experience, robbery suspects will often keep clothing used in the offense, as well as weapons and proceeds from the robbery, in their residences. He stated that suspects often are unaware of the forensic value of such items and will leave them on their premises for an extended period. Castro further averred that items such as firearms are not perishable, quickly consumed, or readily destroyed, and that suspects oftentimes possess such items on a continuing basis. This affidavit was also reviewed and approved by an assistant district attorney.

### 3. Vehicle Warrant

On January 11, 2025, Detective Castro sought and obtained a warrant for the 2014 Lincoln MKS. This affidavit largely tracked the affidavit for the residence. Castro added that police recovered and towed the 2014 Lincoln MKS, and a DOT check revealed that the vehicle registered to Hobson. Once again, this affidavit was reviewed and approved by an assistant district attorney.

### B. Magistrate Judge's Recommendation

Before the magistrate judge, Hobson argued that the cell phone and residence search warrant affidavits failed to establish probable cause and included material misrepresentations and omissions. He further argued that the evidence obtained pursuant to the vehicle warrant

should be suppressed because of the earlier warrantless seizure of the car and because the information upon which the warrant was based had grown stale.

### 1. Cell Phone Warrant

Hobson alleged two flaws in the cell phone warrant affidavit: (1) it failed to establish that the target number was his, and (2) it failed to establish that evidence of the robbery would be found on the phone. Alternatively, he sought a <u>Franks</u> hearing based on alleged misrepresentations and omissions.

The magistrate judge noted that much of Porter's affidavit was devoted to establishing that Tyler was Suspect 2. A search warrant for Tyler's phone records revealed 178 calls/texts with the target number. In attributing the target number to Hobson, the affidavit relied on "MPD records [that] had this phone number belonging to Mario A. Hobson." (R. 65 at 2.) The magistrate judge agreed this allegation was too conclusory and non-specific to tie the number to Hobson, explaining:

> Because the affiant does not indicate which MPD records the affiant checked, the reviewing judge could not consider whether the records were reliable and current in order to make her own, independent determination as to whether the target number belonged to Hobson. And without connecting Hobson to the target number, law enforcement could not connect that Hobson fit the build of Suspect 1 and that he owned a car similar to the vehicle identified in the robbery. Thus, this conclusory statement sinks the connection between Hobson and the targeted phone.

(R. 60 at 11.)

However, the magistrate judge rejected Hobson's second argument:

> Porter avers that suspects committing crimes like armed robberies often use their cell phones in some way to help perpetrate the crime. Porter noted that in this robbery case there were at least two co-actors involved, and cell phone data could help lead to the identification and location of other potential co-actors. He avers that through his training, experience, and general observations of everyday life, he knows that cell phone use is pervasive in society, leading him to believe

8

that the suspect had his phone with him during the robbery and continues to possess the phone.

While Porter's statements are not the most robust, I find them sufficient to support probable cause that evidence of the crime would be found on the phone. Both the "nature of the crime" and the "means by which it was committed" allow judges to make reasonable inferences about where evidence may be found. This is a situation where the affidavit established that at least two individuals were working together during the armed robbery. Porter avers that cell phones are often used in perpetrating robberies, and in situations where co-actors are involved, the cell phone data proves even more useful in leading law enforcement to other potential co-actors. Given the affiant established that the robbery was committed by two suspects, that Tyler was connected to the robbery, and that Tyler made a significant number of calls and/or texts to the target number in the period surrounding the robbery, it was not unreasonable for the issuing judge to conclude that there was a fair probability that evidence of the crime would be found in the records of the targeted cell phone.

(R. 60 at 12, citations omitted.)

The magistrate judge ultimately found suppression unwarranted under Leon:

Despite the affiant's conclusory statement connecting Hobson to the target number, this affidavit was not so bare bones that no reasonable officer could have relied on it. The warrant detailed the robbery and how law enforcement came to believe Tyler was Suspect 2. The warrant further articulates how law enforcement learned of the target number and the large number of communications between Tyler and that number during the relevant period. As such, Hobson has failed to rebut the presumption of good faith established by law enforcement seeking a search warrant in the first instance.

(R. 60 at 14.)

The magistrate judge also rejected Hobson's Franks request. Hobson argued that, while Porter averred facial recognition matched Tyler with 92% similarity, Porter omitted that the search produced dozens of potential suspects, some with a higher similarity than 92%. Hobson further argued that Porter misrepresented that Strasser was able to definitively "match" Suspect 2 from the surveillance video stills to Tyler's booking photo, and that the person seen exiting the Lincoln MKS before the robbery could be positively identified as Suspect 2.

9

The magistrate judge concluded that Hobson fell far short of meeting the substantial preliminary showing required to obtain a Franks hearing. The affidavit's omission of the fact that other individuals were also identified by the facial recognition software did not undermine the probable cause analysis, as this was not the only piece of information tying Tyler to the robbery, e.g., the post on Tyler's Facebook page depicting Tyler wearing the same shoes worn by Suspect 2. "Given these other connections, the 92 percent match simply bolsters the other facts identifying Tyler as Suspect 2. Thus, unless evidence exists that was known and omitted that tied these other, higher matched, individuals to the robbery, the omission of this fact does not alter the probable cause analysis." (R. 60 at 16.)

Nor was the magistrate judge impressed by the alleged misrepresentations. The still images taken from the robbery surveillance video were clear enough to see a shine coming from Suspect 2's shoes, confirming they are the "shiny" shoes seen on Tyler's Facebook page. While Suspect 2 wore a mask, the entirety of his eyes, nose, and eyebrows could be seen despite his mouth being covered. And while the image of Suspect 2's hand tattoo was not crystal clear, it was clear enough to see Suspect 2 indeed had a hand tattoo similar to the one observed in Tyler's booking photograph. "Thus, Hobson has not shown evidence the affiant either lied or recklessly disregarded the truth." (R. 60 at 17.) Finally, even if the statement that Suspect 2 was seen leaving the MKS was omitted, probable cause remained as Hobson conceded that the person seen on the surveillance video minutes after the robbery carrying a full duffle bag was indeed Suspect 2.

### 2. Residential Warrant

Hobson argued that the affidavit failed to establish that he lived at the target residence at the time of the robbery or would have kept any evidence of the robbery in the residence, and

10

that the information in the affidavit was stale. The magistrate judge rejected these arguments, noting that on January 8, 2025, the day before the warrant application, law enforcement observed Hobson park in front of the residence, and Hobson listed his home address as the upper unit of the target residence during the booking process following his arrest that day. The magistrate judge further noted that Castro averred, based on his training and experience, that robbery suspects often keep clothing used during the offense, weapons, and proceeds of the crime in their homes, and that firearms are not perishable and remain in possession for long periods of time. The magistrate judge relied on <u>United States v. Aljabari</u>, 626 F.3d 940, 946 (7th Cir. 2010), where the court noted that "[f]ew, if any, additional facts would be needed to support" a warrant to search a suspect's home for clothes. "After all, what more likely place to find a suspect's clothes than his own home?" The court concluded:

> When probable cause exists to believe an individual has committed a crime involving physical evidence, and when there is no articulable, non-speculative reason to believe that evidence of that crime was not or could not have been hidden in that individual's home, a magistrate will generally be justified in finding probable cause to search that individual's home. We do not mean to adopt a broad, per se rule allowing a search of an individual's home whenever that individual is suspected of a crime. Nevertheless, our reasoning reflects both the common-sense realization that evidence of crime will often be found in a suspect's home, as well as the substantial deference we must give to a magistrate's finding of probable cause to issue a search warrant.

<u>Id.</u> (internal citations omitted).

The magistrate judge here concluded: "Given the Seventh Circuit's statements in <u>Aljabari</u>, the nature of the objects of the search (i.e., clothing, firearms, currency), Hobson's admission that he lived at the residence, and Castro's averments regarding what he knows from his training and experience, the affidavit establishes probable cause to research Hobson's residence." (R. 60 at 19-20.) Hobson noted that he did not live at the target residence at the

11

time of the robbery, but the magistrate judge found it reasonable to assume that when a person moved he would bring with him personal items such as clothing and firearms. Finally, the magistrate judge rejected Hobson's staleness argument, noting that there is no bright line rule for determining when information is too old, that "staleness" is particularly relevant to the legality of a search for a perishable or consumable object, like cocaine, United States v. Seiver, 692 F.3d 774, 777 (7th Cir. 2012), and that "evidence of the sighting of a gun (or related items) does not automatically grow stale as time passes," United States v. Hicks, 650 F.3d 1058, 1068 (7th Cir. 2011). (R. 60 at 20-21.)

In the alternative, the magistrate judge found that good faith applied. "As explained above, the warrant sufficiently establishes that Hobson lived at the North 49th Street address at the time the warrant was issued on January 9, 2025 and that even if Hobson moved to this address several weeks after the robbery, evidence of durable and non-perishable items, such as firearms and clothing, could still be found at the residence." (R. 60 at 21-22.)

The magistrate judge also rejected Hobson's Franks challenge to this warrant. In addition to the alleged flaws in the cell phone warrant affidavit, Hobson noted that the residence warrant affidavit omitted that on December 7, 2024, he changed his mailing address to 2941 N. 38th Street. Hobson argued that this omission was material because it further undermined the nexus between the robbery and the N. 49th Street address. The magistrate judge found the omission of Hobson's move on December 7, 2024, did nothing to undermine the nexus between the robbery and the target residence, as Hobson himself told police, on January 8, 2025, that he lived at the target residence. Nor did the omission of Hobson's moves since the robbery undermine the nexus between the robbery and this current home. "Once again, it is reasonable to believe that one would bring his non-perishable personal items, such

12

as his firearms and clothing, along with him when he moved. Hobson has not demonstrated a <u>Franks</u> hearing is warranted as to the residential warrant." (R. 60 at 23.)

### 3. Vehicle

Hobson first challenged the warrantless seizure of his vehicle. The magistrate judge concluded that the police had probable cause to seize the MKS based on its involvement in the Boost Mobile robbery and connection to Hobson. (R. 60 at 25-26.) Hobson also argued that the information included in the vehicle warrant affidavit was stale. The magistrate judge concluded:

> For the same reasons I reject Hobson's staleness argument as to the residential warrant, I reject it as to the vehicle warrant. That this warrant is for a vehicle rather than a residence does not change the analysis. This is not "long term storage" as Hobson asserts—less than two months elapsed since the robbery incident. Firearms are often kept in vehicles, as are articles of clothing. For these reasons, I find the vehicle warrant supported by probable cause.

(R. 60 at 26.) In the alternative, the magistrate judge found that the good faith doctrine also applied to this search. (R. 60 at 26.)

### III. DISCUSSION

Reviewing the matter de novo, I substantially agree with the magistrate judge's thorough, well-reasoned report. I address Hobson's objections below.

## A. Cell Phone Warrant

### 1. Probable Cause

Hobson argues the affidavit in support of the cell phone warrant failed to establish probable cause in two significant ways. First, it provided little information that the target phone number belonged to him. Most of the affidavit, Hobson notes, outlines how police came to believe Tyler was Suspect 2. In attributing the target number to him, the affidavit relied on "MPD records [that] had this phone number belonging to Mario A. Hobson." (R. 65 at 2.) The

13

magistrate judge agreed this allegation was too conclusory and non-specific to tie the number to Hobson. (R. 60 at 11.) The affidavit also noted the frequent contacts between Tyler's phone and the subject number, but Hobson argues that Tyler's connection to the robbery did not give police free reign to search the cell phone data of everyone with whom Tyler frequently communicated. (R. 65 at 3-4.)

Hobson argues that the affidavit was deficient in a second way: it failed to establish any reason to believe evidence of the robbery would be found in the cell phone data. While the affidavit generally averred that suspects often use their phones to help them commit crimes, it provided no detail about <u>how</u> suspects committing robberies might use their phones, much less specific reason to believe the suspects in this robbery used their phones. (R. 65 at 4.) Cell phones may be ubiquitous in modern life, but this does not mean they can automatically be searched with respect to every crime. (R. 65 at 5.) As noted above, the magistrate judge rejected this argument, find that it was not unreasonable for the issuing judge to conclude that there was a fair probability that evidence of the crime would be found in the records of the targeted cell phone. (R. 60 at 12.) Ultimately, she declined to recommend suppression under the good faith doctrine. (R. 60 at 14.)

In the objections briefing, Hobson primarily argues the court should reject good faith because the affidavits contained material misrepresentations and omissions, entitling him to a <u>Franks</u> hearing. (R. 65 at 6-14, 25; R. 78 at 3, 5.) I address the <u>Franks</u> issue below.

Hobson briefly argues that good faith does not apply because a reasonably well-trained officer should have known the warrants did not pass muster. He relies on cases in which courts found affidavits containing little more than conclusory statements too bare bones for an officer to reasonably rely on the warrant. (R. 65 at 26-27.) While the assertion that the target number

14

belonged to Hobson could be deemed conclusory, the affidavit overall provided significant information tying Hobson to the robbery (e.g., his ownership of a vehicle matching the one apparently used in the robbery) and provided a substantial basis for the issuing judge to conclude that evidence of the crime would be found in his phone records (e.g., location information).

Hobson cites no case finding a materially similar affidavit deficient. He relies on Owens v. United States, 387 F.3d 607 (7th Cir. 2004), but that case is easily distinguishable. In Owens, the only evidence presented in the "barebones" affidavit was an allegation that an informant had bought "a quantity of crack" from the defendant three months prior. Id. at 608. "There was no indication either of the actual quantity of crack or of the reliability of the informant." Id. Nor did the affidavit include updated information since the officers received the tip three months prior. Accordingly, the court reasoned that "there would be no basis for thinking either that the premises were a crack house or that the money received in the sale would still be on the premises." Id. In the present case, the affidavit included a detailed discussion of the robbery investigation, and the information had not grown stale; the robbery occurred less than one month earlier, and the warrant sought evidence, including location information, that, unlike drugs or money, would still be there.[1]

In sum, Hobson fails to overcome the presumption of good faith, which is further bolstered by Porter's consultation with an assistant district attorney. See United States v. Pappas, 592 F.3d 799, 802 (7th Cir. 2010) ("Consulting with the prosecutor prior to applying for a search warrant provides additional evidence of that officer's objective good faith.")

---

[1]In the objections reply, Hobson cites United States v. Wilson, 153 F.4th 478 (5th Cir. 2025). (R. 78 at 3.) For the reasons set forth in section B.1. below, Wilson is inapposite.

15

(cleaned up).

    **2.**   <u>Franks</u>

      Hobson alleges four misrepresentations in the cell phone warrant affidavit: (1) Tyler was not the only—nor even the highest percentage—match when officers used a facial recognition program to compare surveillance footage from the robbery to their database of booking photos; (2) the affidavit overstated the certainty with which Tyler was "matched" as the suspect seen in the surveillance video; (3) the affidavit overstated the certainty with which Tyler's tattoo "matched" the purported tattoo on the suspect's hand; and (4) the affidavit misleadingly claimed that Tyler was seen exiting a Lincoln MKS minutes before the robbery when, in fact, the relevant surveillance footage was too grainy to positively identify the person seen exiting the vehicle. Hobson argues the magistrate judge too easily dismissed these significant misrepresentations and failed to consider their cumulative impact on any finding of probable cause. (R. 65 at 6.)

      Hobson notes that the facial recognition software identified dozens of potential matches, including two with a higher similarity percentage. (R. 65 at 7.) But the officers did not rely on the facial recognition program alone; they also compared the stills from the surveillance footage to Tyler's booking photos, compared the tattoo on Suspect 2's hand to the photo of Tyler's hand, and matched the shoes worn by Suspect 2 with the shoes Tyler was seen wearing in a Facebook post.

      Hobson argues it is impossible to say with certainty that Tyler's booking photo (as opposed to one of the others matched by facial recognition) matched Suspect 2 (R. 65 at 9), or that Suspect 2's tattoo was a "match" for Tyler's (R. 65 at 10). But as the magistrate judge noted, "unless evidence exists that was known and omitted that tied these other, higher

16

matched, individuals to the robbery, the omission of this fact does not alter the probable cause analysis." (R. 60 at 16.)

Hobson further argues that the shoes seen on Suspect 2 appear to be a popular brand and style, such that the presence of the shoes is hardly a distinguishing characteristic. (R. 65 at 11.) But probable cause depends on the totality of the circumstances—the whole picture—not each fact in isolation. Rees, 957 F.3d at 766. Even if other people own Air Jordan 11s, here the police collected several data points linking Tyler to the robbery. Hobson fails to make a substantial preliminary showing that Porter deliberately or recklessly presented a materially misleading picture to the issuing judge, creating an improper veneer of certainty, as Hobson alleges. (R. 65 at 12.)

Finally, Hobson argues that the security footage from the nearby property is not clear enough to determine that the person seen exiting the Lincoln MKS shortly before the robbery is the same man later seen walking with the duffle bag of stolen goods, i.e., Suspect 2. (R. 65 at 12.) Hobson complains that the affidavit did not account for any potential uncertainty, nor did it include screenshots so the issuing judge could make her own determination. The magistrate judge dismissed this argument, noting that even if the statement regarding Suspect 2 leaving the MKS prior to the robbery is omitted, it does not lessen Tyler's connection to the robbery. (R. 60 at 17.) Hobson argues the magistrate judge misunderstood his challenge; the claim that Suspect 2 was seen exiting the MKS is material not because it ties Tyler to the offense but because it was a key fact tying Hobson to the robbery. Hobson was implicated based on his ties to Tyler and the sighting of Suspect 2 exiting a vehicle that matched a vehicle registered in Hobson's name. (R. 65 at 13-14.) Hobson claims that if the challenged claim is removed it also removes a key connection of him to the robbery, making it material. (R. 65 at 14.)

17

As the magistrate judge noted, Hobson does not contest that the person seen on the surveillance video after the robbery is Suspect 2. Nor does he address the reasonable inference that Suspect 2 then got into the MKS and left the area. (R. 48-1 at 4 ¶ 22: "At about 1:32 p.m. Suspect 2 is observed again post robbery, this time walking south on N 28th St with the filled duffle bag and leaves camera range. Moments later the same MKS is observed traveling north on N 28 St and then west on Ricardson [sic] Pl out of view.".) I agree with the magistrate judge that, even omitting the reference to Suspect 2 exiting the MKS prior to the robbery, probable cause remains.

**B.     Residential Warrant**

**1.     Probable Cause**

Hobson first argues that the residential warrant affidavit failed to provide a sufficient nexus between the alleged crime and the place to be searched. Probable cause to arrest a person does not, he contends, automatically give police probable cause to search his residence. (R. 65 at 15; R. 78 at 5-6.) He notes that the Seventh Circuit has repeatedly declined to adopt such a categorical rule, including in Aljabari, the case upon which the magistrate judge relied. (R. 65 at 17.)

"When probable cause exists to believe an individual has committed a crime involving physical evidence, and when there is no articulable, non-speculative reason to believe that evidence of that crime was not or could not have been hidden in that individual's home, a magistrate will generally be justified in finding probable cause to search that individual's home." Aljabari, 626 F.3d at 946. The Seventh Circuit added, in language particularly relevant here: "Few, if any, additional facts would be needed to support the warrant to search Aljabari's home

18

[for clothing]. After all, what more likely place to find a suspect's clothes than his own home?" Id.[2]

Hobson contends that in this case there was plenty of reason to doubt evidence of the offense would be found in the home, including the fact that he was not the suspect observed with the stolen goods; he had moved homes at least once in the weeks since the robbery; and the fact that the clothing worn during the robbery was meant to conceal the suspects' identities, making it less likely they would retain those clothes. (R. 65 at 17.)

While Suspect 2 was observed carrying the stolen goods, it was reasonable for the issuing judge to infer he got into the MKS, Hobson's vehicle.[3] It is also reasonable to assume that when a person moves he will take his property, including clothing and firearms, with him. Finally, the issuing judge could rely on Castro's experience that robbery suspects frequently store and maintain such items in their homes for extended periods of time, failing to recognize their forensic value and incriminating nature. (R. 48-2 at 7 ¶ 30.)

Second, Hobson argues that the affidavit failed to establish probable cause because the information had grown stale; the robbery occurred in November 2024 and the searched occurred in January 2025. (R. 65 at 17.) He relies on out-of-circuit cases holding courts must consider whether the offense was discrete or isolated, rather than recurring or continuous. (R.

---

[2]In reply, Hobson faults the government for relying on drug trafficking cases, stating that the Seventh Circuit has, in that narrow category of cases, permitted broad experiential assumptions to sometimes substitute for more specific nexus facts. (R. 78 at 6-7.) But Aljabari, upon which the magistrate judge primarily relied, was an arson case. 626 F.3d at 943. Hobson further contends that different rules apply to short-lived and discrete offenses, like robberies. (R. 78 at 7.) However, each case must be considered on its own facts, considering the totality of the circumstances.

[3]Suspect 1 brandished the gun and stole the money. (R. 48-2 at 4 ¶ 11.)

65 at 18.) He contends the single robbery at issue here was not indicative of any ongoing crime, heightening staleness concerns. He further notes that firearms are portable and easily transferred. (R. 65 at 19.)

There are no bright line time limits after which information becomes too stale to support a finding of probable cause. "Indeed, the case-by-case, totality-of-the-circumstances, nature of the probable cause determination militates against establishing a bright line time limit." United States v. Carroll, 750 F.3d 700, 705 (7th Cir. 2014). Consequently, I am not obligated to deem the information at issue in this case stale just because the crime appears to be an isolated one. "Instead, as is well understood, each case is sui generis." Id. Given the nature of the items sought here, e.g., clothing and firearms, and the relatively short time lapse between the robbery and the search, the information in the application had not grown stale.

At the very least, the officers could have relied in good faith on the issuing judge's finding of probable cause. Hobson responds that the affidavit contains virtually no facts establishing cause to believe evidence of the robbery would be located at his home, just conclusory assertions. (R. 65 at 27.) But Castro provided a detailed discussion, based on his training and experience, regarding where robbery suspects often keep clothing, proceeds, and weapons. (R. 48-1 at 7.) The issuing judge was permitted to rely on his experience, and, as noted, the Seventh Circuit has held that, absent an articulable, non-speculative reason to believe that evidence of the crime was not or could not have been hidden in a suspect's home, "a magistrate will generally be justified in finding probable cause to search that individual's home." Aljabari, 626 F.3d at 946.

Hobson cites United States v. Wilson, 153 F.4th 478, 481 (5th Cir. 2025), but the "threadbare" and "bare-bones" affidavit at issue in that case is not materially similar to this one.

20

In that case, police suspected Wilson of pulling a gun during an altercation with another customer at a Waffle House. A detective applied for a warrant to search Wilson's girlfriend's apartment, averring that "witnesses have confirmed seeing Wilson at the residence." Id. at 482. The detective further averred that items "related to" the Waffle House incident were "believed to be located there." Id. at 485. In suppressing the evidence, the panel majority first noted that the record made the claim that Wilson even lived at the residence "dubious, at best." Id. The court further noted that the affidavit's "lone, unexplained assertion that officers 'believed' contraband was 'located at [Wilson's] residence' is far too thin to make probable cause reasonable." Id. at 486. Finally, the court distinguished other cases where it had found good-faith reliance, e.g., where the affidavit explained why the evidence sought would likely be found in the place to be searched. Id. at 488-89.[4]

In the present case, Hobson told police, the day before Castro applied for the warrant, that he lived at the subject residence. And Castro explained in detail why he expected evidence of the robbery would be found there. Good faith applies to the residential search.

## 2. Franks

Hobson notes that the residential search warrant makes the same claims as the cell phone warrant. (R. 65 at 20.) For the reasons set forth above, I reject Hobson's Franks arguments regarding the cell phone warrant.

Hobson further argues that the residential warrant affidavit omitted the fact that he had moved at least once after the robbery in November 2024. (R. 65 at 20.) Specifically, this

---

[4]One judge dissented in Wilson, noting: "Most people keep their personal possessions at home. And police officers may rely on that basic intuition when executing search warrants." Id. at 490 (Ho, J., dissenting).

affidavit omitted the information included in the previous application that on December 7, 2024, he changed his mailing address to 2941 N. 38th Street. (R. 65 at 20-21.) Hobson argues that information was material because it further attenuated the N. 49th Street address from the November 2024 robbery. (R. 65 at 21.)

As the magistrate judge noted, Hobson told police on January 8, 2025, the day before the warrant application, that he lived at the 49th Street address. Surveillance officers also saw Hobson park the MKS in front of that address and use keys to enter the main entry door. Inclusion of the information about his previous move would not have undermined probable cause to search the 49th Street residence.

## C.    Vehicle Search

### 1.    Warrantless Seizure

Hobson argues that the police could not seize his vehicle without a warrant unless it was subject to forfeiture under a statute. (R. 65 at 21-24.) At the very least, the warrantless seizure required probable cause to believe the vehicle was involved in the offense. Hobson contends that, at best, the officers had cause to believe he knew Tyler and had been in the area around the time of the robbery in his Lincoln MKS. (R. 65 at 24.)

I agree with the magistrate judge that probable cause existed for law enforcement to believe the Lincoln MKS was involved in the Boost Mobile robbery. (R. 60 at 25-26.) That the police first seized the car before seeking a warrant to search it does not require suppression of evidence. As the Supreme Court has noted:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the

22

Fourth Amendment.

Chambers v. Maroney, 399 U.S. 42, 52 (1970).

> **2.      Staleness**

Hobson argues that, although the officers eventually obtained a warrant to search the MKS, the information in the affidavit was too stale to support a finding of probable cause for all of the same reasons outlined in the prior staleness analysis. (R. 65 at 25.) For the reasons set forth above and in the magistrate judge's recommendation, I reject Hobson's staleness arguments. Finally, as the magistrate judge also found, the good faith doctrine would apply to the vehicle search warrant as well.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 60) is adopted, and Hobson's motion to suppress (R. 47) is denied.

**IT IS FURTHER ORDERED** that the parties file a joint status report advising the court of their anticipated next steps in the case by **January 9, 2026**. If an executed plea agreement is filed before January 9, 2026, the parties do not have to file a status report.

**FINALLY, IT IS ORDERED** that the time between December 3, 2025, and January 9, 2026, is excluded from the speedy trial calculation under 18 U.S.C. §§ 3161(h)(7)(A) and (B)(iv), as the ends of justice served by so continuing the case outweigh the best interests of the defendant and the public in a speedy trial.

Dated at Milwaukee, Wisconsin, this 3rd day of December, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

23